```
 1                    UNITED STATES OF AMERICA

 2                  CENTRAL DISTRICT OF CALIFORNIA

 3        THE HONORABLE STEPHEN V. WILSON, JUDGE PRESIDING

 4

 5  THE UNITED STATES OF AMERICA,   )
                                    )
 6                  Plaintiff,      )
                                    )   NO. CR-07-401-SVW
 7             vs.                  )
                                    )   SENTENCING HEARING
 8  KENNETH COLE,                   )
                                    )
 9                  Defendant.      )
    _____)
10

11            REPORTER'S TRANSCRIPT OF PROCEEDINGS

12                 Monday, September 15, 2008

13

14

15  APPEARANCES:

16  FOR THE PLAINTIFF:      UNITED STATES ATTORNEY
                            BY:  Jeffrey Backhus, Assistant
17                          U.S. Courthouse
                            312 North Spring Street
18                          Los Angeles, California 90012
                            (213) 894-4267
19

20
    FOR THE DEFENDANT:      MARK M. KASSABIAN, Esq.
21                          (No Appearance made to Reporter)
                            (626) 792-0500
22

23

24  Reported By:
    WALTER R. LEDGE, CCR #B-1875
25  PANEL U.S. COURT REPORTER
```

Walter R. Ledge, Court Reporter

```
 1     LOS ANGELES, CALIF; MONDAY, SEPTEMBER 15 2008; 12:00 NOON
 2                            --oOo--
 3            THE CLERK:  Calling Calendar Item No. 4, Case No.
 4   CR-07-401-SVW, UNITED STATES OF AMERICA VERSUS KENNETH COLE.
 5            Counsel, please state your appearances.
 6            MR. BACKHUS:  Good morning, Your Honor; Jeffrey
 7   Backhus for the United States.
 8            MR. KASSABIAN:  Good morning, Your Honor; Mark
 9   Kassabian for defendant Kenneth Cole, who is present in
10   custody.
11            THE COURT:  This is the time for sentencing.  Has
12   the defendant read the presentence report?
13            MR. KASSABIAN:  Yes, Your Honor.
14            THE COURT:  Then I will hear from you.  Just give
15   me a moment, there are a few letters I want to look at.
16            MR. KASSABIAN:  Certainly, Your Honor.
17         (Pause.)
18            THE COURT:  All right.  I will hear from you,
19   Mr. Kassabian, and/or your client.
20            MR. KASSABIAN:  Thank you, Your Honor.
21            THE COURT:  The issue here is the mandatory
22   minimum.
23            MR. KASSABIAN:  It is, Your Honor.  And I think
24   what we're faced with here is a tragic situation, or a
25   potentially tragic situation of a young man, twenty-seven
```

Walter R. Ledge, Court Reporter

1  years old, with a wife and two children facing the
2  probability or the possibility of spending the prime of his
3  life behind bars.
4         As the sentencing letters show, as Your Honor
5  has reviewed, Kenneth Cole is an intelligent young man
6  who had and has substantial potential in his life.
7         THE COURT:  He has a horrible criminal record.
8         MR. KASSABIAN:  He does, Your Honor.  He does,
9  Your Honor, as a juvenile.  He has no adult criminal record.
10 His juvenile criminal record is substantial.
11        What we have is a situation of the period of
12 time, say, from the end of his minority to the present
13 time of, I believe, no substantial criminal record.
14        The criminal history point that's been assigned
15 to him by the presentence report, which we take issue
16 with under the WASHINGTON case, relates to a juvenile
17 conviction.
18        So what we're faced with is no adult
19 convictions.  So we're dealing with a period of time from
20 the end of his minority to the current offense, which he
21 takes full responsibility for, of no convictions.
22        So I think the Court should give credence to
23 these letters that have been submitted that this is an
24 intelligent man --
25        THE COURT:  Let's say everything you say is true.

Walter R. Ledge, Court Reporter

```
 1  On what legal ground could I not impose the mandatory
 2  minimum?  It says "mandatory," and the Ninth Circuit as
 3  recently as 2005 says that BOOKER doesn't effect that
 4  requirement unless there is a motion for downward departure
 5  by the government, which there isn't in this case; or unless
 6  there is another factor, like sentencing entrapment or
 7  something like that.  And that hasn't occurred here.
 8            So on what ground could I ignore the mandatory
 9  minimum?
10            MR. KASSABIAN:  There's no controlling legal
11  authority for Your Honor to ignore the mandatory minimum.
12            THE COURT:  If I did, you would have a momentary
13  victory.  Isn't it clear as a bell that the Ninth Circuit
14  would correct my error?
15            MR. KASSABIAN:  I don't think it would be error,
16  Your Honor.
17            THE COURT:  Why not?
18            MR. KASSABIAN:  I think that the indications from
19  the KIMBROUGH case, while not addressing the mandatory
20  minimum, point up the sentencing disparities between crack
21  and powder cocaine in general.
22            So taking the context of the KIMBROUGH case
23  under the sentencing guidelines, the same infirmities,
24  looking at it from an Eighth Amendment perspective, of
25  the lack of proportionality, should apply to the
```

```
 1  mandatory minimums as well.
 2          Your Honor, I'm happy to take a momentary
 3  victory and to take this up that --
 4          THE COURT:  You can take it up either way.  I
 5  mean, you can certainly appeal a sentence that has the
 6  mandatory minimum as well as one that doesn't.  So it's
 7  appealable both ways.
 8          From the government's standpoint, you did
 9  cite --
10          And I'll allow you to continue in a moment,
11  Mr. Kassabian -- but the government did cite the CANTRELL
12  case; correct?
13          MR. BACKHUS:  Yes, we did, Your Honor.
14          THE COURT:  Actually, the CARDENAS case --
15          MR. BACKHUS:  Yes, the Cardenas Case --
16          THE COURT:  -- which is cited at 405 F.3rd.  And
17  that is the final words of the Ninth Circuit.
18          MR. BACKHUS:  That is, Your Honor.  I'm not aware
19  of anything else on that.
20          THE COURT:  I guess what Mr. Kassabian is saying
21  is that the amendments to the crack guidelines put that case
22  into question.  Is that what he's saying?
23          MR. BACKHUS:  I think that he's trying to argue by
24  extension that if in fact the guidelines were reduced for
25  crack cocaine offenses that he believed, by extension, the
```

```
 1  mandatory minimums should not apply as well.
 2              I can say that that's in fact not the law.  I
 3  think that the defense counsel is arguing for an illegal
 4  sentence.
 5              Regardless of that, Your Honor, I believe that
 6  based on this defendant's record and just the large
 7  amounts of narcotics and money and firearms and gang
 8  activity that were involved in this case, the government
 9  believes that sentence is reasonable regardless of
10  anything else.
11              But again, that's not exactly what the Court
12  asked me so --
13              THE COURT:  No, what you say may very well be so.
14  But the specific question is --
15              MR. BACKHUS:  I'm going to say, as far as my
16  research goes, Your Honor, I think this is plainly clear.
17  The only reasons that --
18              THE COURT:  What is the street value of 340 grams
19  of crack cocaine?
20              MR. BACKHUS:  Your Honor, I don't know what it is
21  off the top of my head.
22              THE COURT:  Do you know what it is?
23              MR. KASSABIAN:  I don't know, Your Honor.
24              MR. BACKHUS:  I know, however, that, for example,
25  when the defendant was arrested he had almost $50,000 in
```

```
 1  cash, marijuana, and was holding a loaded firearm as the
 2  officers entered his residence.  But I do not, off the top
 3  of my head, know the street value.
 4          THE COURT:  But this isn't the -- and apparently
 5  there was also powder cocaine involved in this case too.
 6          MR. BACKHUS:  Powder cocaine, Your Honor, crack
 7  cocaine, marijuana.  And the defendant was involved in the
 8  sale of firearms as well.
 9          THE COURT:  I see.  I mean, this case, from a
10  factual standpoint, is not the kind of case that congress
11  had in mind when some street-corner defendant was selling a
12  couple of baggies of crack cocaine.
13          MR. BACKHUS:  I think that's correct --
14          THE COURT:  -- there would be this disparate
15  treatment if that same person had sold some powder
16  cocaine --
17          MR. BACKHUS:  Your Honor, in fact, the
18  circumstances, or the effects that crack cocaine have on the
19  community that were cited by the Sentencing Commission and
20  congress, were specifically dealing with an individual like
21  this defendant involved in large amounts of crack cocaine,
22  firearms --
23          THE COURT:  Large amounts of money.
24          MR. BACKHUS:  Large amounts of money that have a
25  tremendous impact on the community.
```

Walter R. Ledge, Court Reporter

```
 1              So even if all that was correct, Your Honor, I
 2   believe that this case in particular does warrant the
 3   offense.  And in fact the government agreed -- when the
 4   defendant pled guilty in the case, the government agreed
 5   to only have him plead guilty to one of the deals that he
 6   was in fact involved with.
 7              I think that, if anything, the government cut
 8   him a rather large break on this and is now seeking only
 9   the mandatory minimum when if in fact the entire 300
10   grams of crack cocaine was considered, the penalties
11   would, in fact, be much higher.
12              THE COURT:  Okay.
13              You can continue on, Mr. Kassabian.
14              I understand your argument.  And from a legal
15   standpoint, I think it's an argument you are going to
16   have to persuade the court of appeals about because I
17   think that the precedent here in the CARDENAS case is
18   such that the mandatory minimum applies and that your
19   argument regarding the guideline change is, by
20   implication, something that you will have to argue
21   elsewhere.
22              That's my sense of it.  But if you have other
23   things to say, I'm certainly receptive.
24              MR. KASSABIAN:  A few matters, Your Honor.
25              THE COURT:  Yes.
```

```
 1              MR. KASSABIAN:  One to deal with the gang
 2  allegation.  My recollection of the P.S.R. is that the
 3  mention of the gangs in the P.S.R. dealt with the initiation
 4  of the case.  I don't believe there is substantial evidence
 5  in the P.S.R. about continuing gang involvement.
 6              THE COURT:  Where was the gang -- what paragraph
 7  of the presentence report is there a reference to gang
 8  activity?
 9              MR. BACKHUS:  Paragraph 7 I have cited in my
10  brief.
11              THE COURT:  Let me just take a look at it again.
12          (Pause.)
13              MR. BACKHUS:  And it does indicate that in May of
14  2005 he was identified as a narcotics dealer involved with
15  the neighborhood Crips and as a member of the 5-5
16  neighborhood --
17              THE COURT:  What is it that you suggest I do in
18  that regard?
19              MR. KASSABIAN:  That if all there is is a mention
20  of a potential identification of gang membership without
21  additional evidence of substantial involvement in gang
22  activity, then I don't think the Court should take into
23  account gang activity.
24              THE COURT:  I'm not taking that into account, and
25  it's just part of the report.
```

```
 1            MR. KASSABIAN:  Very well, Your Honor.  I just
 2  wanted to mention that point.
 3            MR. BACKHUS:  The government has no objection.
 4            THE COURT:  Yes.
 5            (Pause.)
 6            MR. KASSABIAN:  Taking into account the Court's
 7  comment that you are inclined with the mandatory minimum, I
 8  only ask that the Court show mercy.  This is a man with two
 9  small children.  He has a young wife, a young family.  He
10  does have potential in this world.
11            I think that the letters show a man who is
12  capable and who, in the right circumstances, has a
13  benefit to society.
14            If the Court is inclined to give a substantial
15  jail sentence, I would ask the Court and argue that the
16  Court not give a substantial fine.  If the Court is
17  inclined to give a mandatory minimum, then what we're
18  looking at is a man with three dependents who will be
19  spending a substantial amount of time in jail and the
20  ability to -- whatever his ability to pay, by the time he
21  gets out, will be substantially eroded.
22            Further, if the Court is inclined to give a
23  substantial sentence, that it be in California.
24            THE COURT:  All right.  Does Mr. Cole --
25            MR. KASSABIAN:  Southern California.
```

Walter R. Ledge, Court Reporter

```
 1              THE COURT:  I will do that.
 2              Does Mr. Cole wish to be heard?
 3              THE DEFENDANT:  Yes, sir.
 4              THE COURT:  Yes, Mr. Cole.
 5              THE DEFENDANT:  I got a letter I actually wanted
 6   to read to the Court instead.
 7              THE COURT:  Yes, you have that right.
 8              THE DEFENDANT:  (Reading):  Considering, Your
 9   Honor, that you have taken into consideration my criminal
10   history, I have made mistakes as a juvenile.  And as an
11   adult, I tried to go straight but somewhere I got off the
12   wrong track.
13              I do acknowledge and understand the depth of
14   this case and the offense.  But on behalf of my wife and
15   children, I ask for your mercy to be spared upon me.
16              The energy and effort I used and my poor
17   decisions such as to distribute drugs, I know, given a
18   second chance, using the same energy and effort on
19   focusing on working hard legally, I can and will succeed
20   in society.
21              Again, I want to express my empathy and remorse
22   for those affected by my poor decisions, and I apologize
23   publically before the Court for contributing to the
24   domino effect of violence and drug abuse in my own
25   community.
```

```
 1              I never understood how many people would be
 2   effected until reality set in.  The difference between
 3   today and then, when I was making poor decisions, is I'm
 4   consistent with my faith in God.  And I believe in my
 5   potential that I can do better.
 6              I want to thank the Court for giving me this
 7   chance to apologize publically and be expressive how
 8   this time and adversity has shaped me as a man.
 9              Thank you.
10              THE COURT:  Any legal cause why sentence should
11   not now be imposed?
12            (No response.)
13              Pursuant to the Sentencing Reform Act of 1984,
14   it is the judgment of the Court that the defendant
15   Kenneth Cole is hereby committed on Count 1 of the
16   Information to the custody of the Bureau of Prisons to be
17   imprisoned for a term of 120 months.
18              Upon release from imprisonment, the defendant
19   shall be placed on supervised release for a term of five
20   years under the following terms and conditions:
21              One.  He shall comply with the rules and
22   regulations of the U.S. Probation Office and General
23   Order 318;
24              Two.  He refrain from any unlawful use of a
25   controlled substance and submit to drug and alcohol
```

```
 1  testing as directed by the probation officer, not to
 2  exceed eight tests per month;
 3          That he reside or receive drug dependency
 4  treatment as instructed by the probation officer;
 5          That he pay a special assessment of $100;
 6          That he pay a fine to the United States in the
 7  amount of $15,000.
 8          And the reason for the sentence is, first, that
 9  the sentence is the mandatory minimum.  And it's the
10  Court's view that notwithstanding BOOKER, mandatory
11  minimums have to be applied.  And second, even if I were
12  to examine the factors under 3553 of Title 18, this
13  defendant has a serious criminal record.
14          He possessed a loaded gun at the time he was
15  arrested.  He was in possession of nearly $50,000 in
16  currency.  The amount of drugs seized was certainly the
17  distribution amount.
18          Ignoring for the moment whether or not he was a
19  member of a gang, the indicia surely portrays someone who
20  was a substantial drug dealer and one who was prepared to
21  engage in violence to secure his position.
22          Even aside from the mandatory minimum, a
23  sentence of this type would be required.
24          That is the sentence.  And the Court will honor
25  the defendant's request and recommend a place of
```

Walter R. Ledge, Court Reporter

```
 1  incarceration in Southern California.
 2          You have a right to appeal the sentence.
 3          MR. KASSABIAN:  Thank you, Your Honor.
 4          May I put one question on the record?
 5          THE COURT:  Yes.
 6          MR. KASSABIAN:  Mr. Cole asked if he could be
 7  recommended for drug treatment in prison.
 8          THE COURT:  I will make that recommendation.
 9          MR. KASSABIAN:  Thank you, Your Honor.
10          MR. BACKHUS:  Your Honor, just for the record, the
11  defendant's appeal waiver paragraph 24 is applied, given the
12  Court's sentence.
13          THE COURT:  Well, if you waived your right to
14  appeal pursuant to the plea bargain, then you may have
15  waived your right to appeal.  That's something the Court of
16  Appeals can take up.
17          THE DEFENDANT:  I understand, Your Honor.
18          MR. BACKHUS:  Thank you, Your Honor.
19          MR. KASSABIAN:  Thank you, Your Honor.
20          THE COURT:  Thank you.
21          (The proceeding concluded at 12:20 P.M.)
22
23
24
25          (Reporter's Certificate follows on next page.)
```

Walter R. Ledge, Court Reporter

```
 1                            --oOo--
 2    I hereby certify that pursuant to Section 753, Title 28,
 3    United States Code, the foregoing is a true and correct
 4    transcript of the stenographically reported proceedings held
 5    in the above-entitled matter and that the transcript page
 6    format is in conformance with the regulations of the
 7    Judicial Conference of the United States.
 8
 9    Date:  January 03, 2009: _____
10                                   Walter R. Ledge
                                     U.S. Panel Court Reporter
11                                   Certified Court Reporter B-1875
                                     (909) 673-7678
12                                   3244 Pony Drive
                                     Ontario, CA 91761-5064
13                                   wledge@msn.com
14
15
16
17
18
19
20
21
22
23
24
25
```

Walter R. Ledge, Court Reporter